**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                              |     |                                      |
|----------------------------------------------|-----|--------------------------------------|
| **LESTER BLOUNT,**                           | )   |                                      |
|                                              | )   |                                      |
| **Plaintiff,**                               | )   |                                      |
|                                              | )   |                                      |
| **v.**                                       | )   | **Civil Action No.  15-769 (RMC)**   |
|                                              | )   |                                      |
| **JEH JOHNSON, Secretary**                   | )   |                                      |
| **U.S. Department of Homeland Security,**    | )   |                                      |
|                                              | )   |                                      |
| **Defendant.**                               | )   |                                      |

_____  )

**OPINION**

Settlement Agreements are contracts; each side gives up something and each side gets something to resolve a dispute.  In this case, Lester Blount signed a settlement agreement with the Department of Homeland Security (DHS), his employer, to resolve multiple charges alleging that DHS had violated his rights to equal employment opportunity (EEO).  In the days just before the settlement agreement was signed, Mr. Blount learned that he had not been selected for a particular job opportunity.  He immediately contacted an EEO Counselor and complained.  Nonetheless, with advice of counsel, he signed the settlement agreement and agreed, in part, that he would not complain further about anything related to his job that had occurred prior to and as of the date of his signature.

With new counsel, Mr. Blount now sues Jeh Johnson, DHS Secretary, alleging that his non-selection was due to race and age discrimination and in retaliation for Mr. Blount's prior EEO activity.  However, DHS is entitled to the benefit of its bargain in the settlement agreement, which bars this lawsuit.  Accordingly, the motion to dismiss filed by the Secretary will be granted.

# I.  FACTS

Lester Blount, a 47-year-old African American, has been employed by the United States Secret Service since 1997.  From 2003, after the Secret Service had become an agency within DHS, until late 2012, he served as a canine technician in the White House K-9 canine detachment, Office of Protective Operations; specifically in the Special Operations Branch (Branch) of the Uniformed Division.  His assigned canine, "Chico," was trained to detect explosives.  Mr. Blount was always rated as "successful" or better, and was repeatedly recognized for his dedicated service.  Compl. [Dkt. 1] ¶ 14; *see also id.* ¶ 23 ("For the review period, July 2012 through October 2012, Plaintiff's immediate supervisor, Sergeant David Dumont rated Plaintiff's performance as a canine technician as 'currently performing all his duties at a fully successful level.'").

During 2012, Mr. Blount used approximately 265 hours of approved family and medical leave, principally to care for his spouse who suffered from a serious illness.  In the summer of 2012, new ranked officers were assigned to the Branch, including Captain Barry Lewis and Lieutenant Steve Stasiuk, who are both white.

Chico suffered a work injury in November 2012 and was retired from active duty as a result.  When Mr. Blount discussed Chico's injury with Cpt. Lewis, the Captain said that "because [Mr. Blount] was such a great handler, he would ensure that [Mr. Blount] would be assigned another canine and that he would be placed in the next canine explosives detection training course."  *Id.* ¶ 18.  While waiting for that next course, Mr. Blount was assigned to security at the Vice President's residence at the Naval Observatory in Washington, D.C.  In this post, he no longer earned the night differential and overtime pay that he received in the Branch.

In October 2012, the Branch had posted a vacancy announcement for an Officer-Technician on the Canine Explosives Detection Team, for which training was scheduled in February 2013.  Mr. Blount filed a timely application to work with a new dog and continue his previous assignment.  On January 8, 2013, the Branch posted a list of the persons who had been selected, but Mr. Blount was not included.  He immediately became aware of his non-selection.  Mr. Blount has continued to work as security at the Vice President's residence.  As a result of his January 8 non-selection, Mr. Blount brought the instant lawsuit.

### A.  Settlement Agreement

On January 15, 2013, Mr. Blount entered into a negotiated Settlement Agreement with the Secret Service that explicitly settled three formal EEO complaints, identified as EEOC No. 570-2007-00109x/Agency No. DHS-USS-06-034 ("2006 Complaint"), EEOC No. 570-2009-00505x/Agency No. DHS-USSS-08-0065 ("2009 Complaint"), EEOC Appeal No. 120114128/Agency No. HS-USSS-01312-2011 ("2011 Complaint"), as well as all claims raised in an informal EEO complaint, Agency No. HS-USSS-0241-2013 ("2013 Complaint"), which was being counseled by the Agency's EEO Office.  *See* MTD, Ex. 1 [Dkt. 7-2] (Settlement Agreement).  The "2013 Complaint" did not concern Mr. Blount's non-selection claim, which underlies the instant lawsuit and was identified as Agency No. HS-USSS-00962-2013.

Mr. Blount was represented by counsel throughout the settlement negotiations and his lawyer, E. Ned Sloan, signed the Settlement Agreement along with Mr. Blount on January 15, 2015.  The Settlement Agreement specified that "[t]hrough this Settlement Agreement ('Agreement'), Mr. Blount and the Agency settle all matters, claims, or causes of action arising from or related to Mr. Blount's employment with the Secret Service as of the date of the signing of the Agreement, including but not limited to all claims raised" in the formal 2006 Complaint,

2009 Complaint, and 2011 Complaint, as well as the informal 2013 Complaint numbered, in part, 0241-2013.  Settlement Agreement ¶ 1.  Secretary Johnson argues that this language clearly included Mr. Blount's second informal complaint in 2013, numbered in part 962-2013, which complained of his non-selection on January 8, 2013.  Mr. Blount argues that the Settlement Agreement should be limited to the specified EEO Complaints.  *See* Compl. ¶ 32.

Additional language in the Settlement Agreement bears on this question.  For instance, under paragraph 2.b, Mr. Blount agreed to:

> Waive any right that he may have, may have had, or may hereafter discover to bring or file any other complaint, charge, or action with the Agency, the Department of Homeland Security, the Equal Employment Opportunity Commission, the Secret Service's EEO complaints process, the Merit Systems Protection Board, the Office of Special Counsel, a Federal court, or any other administrative or regulatory body, or any other entity if such complaint, charge or action concerns or relates in any manner to his employment with the Secret Service as of the date of the signing of this [Settlement] Agreement . . . .

*Id*. ¶ 2.b.  Further, Mr. Blount agreed that he "[r]elease[d] the Agency, its employees, officers, or agents in their official and individual capacities, from any claims or liability relating to or arising from his employment with the Secret Service as of and including the date of this [Settlement] Agreement . . . ."  *Id*. ¶ 2.c.  Additionally, "[b]y his signature on this Agreement, Mr. Blount agree[d] not to seek recovery of any back-pay, damages, other monetary relief, or attorney's fees and expenses or costs in any judicial or administrative forum in connection with his employment with the Secret Service as of the date of the signing of this Agreement . . . ."  *Id*. ¶ 5.

Mr. Blount "entered into this [Settlement] Agreement freely and voluntarily" without threats or unwritten promises.  *Id*. ¶ 6.  He represented by his signature that he had "read this [Settlement] Agreement, understood all of its terms, has had a reasonable amount of time to consider whether to sign, that he has had the opportunity to discuss the terms . . . with his

counsel and has done so" and that he signed "with knowledge of the meaning and effect of each

of its provisions." *Id.* ¶ 7.

**B. EEO Counseling on Non-Selection Claim**

On January 9, 2013, several days before he signed the Settlement Agreement, Mr.

Blount contacted EEO Specialist Kathy Brezina in the Agency's EEO Office to complain about

his non-selection for the new canine class.  He sent a fax that stated:

> Despite being the most qualified applicant I was passed over for the
> selection of the current canine class.  I became aware of this on
> January 9, 2013.
>
> This supports my claim that the Agency intentionally removed the
> issuance of a second canine to settle my claim.
>
> [W]ill also provide evidence that the intent is to blackball and
> damage careers instead of settling valid EEO charges.

MTD, Ex. 3 [Dkt 7-2] (Fax to EEO Office).  Ms. Brezina responded by email on the same day,

confirming receipt of the fax and asking, "[f]or clarification, is it your intention to initiate a pre-

complaint on this matter?"  *Id.*, Ex. 4.  When she received no answer, Ms. Brezina sent a second

email on January 16, 2013, asking Mr. Blount to "[p]lease respond to me as soon as possible

specifying your intention."  *Id.*  Mr. Blount replied on January 22, 2013, a week after he had

signed the Settlement Agreement, saying, "[y]es, initiate a new complaint."  *Id.*

On January 25, 2013, Ms. Brezina contacted Mr. Blount by email again to make

arrangements to conduct the intake interview for the new complaint.  *Id.*, Ex. 5.  She also asked

if Mr. Blount was represented by an attorney in this new matter.  Mr. Blount responded within

the hour and identified Ned Sloan as his attorney.  *Id.*, Ex. 6.  Ms. Brezina left a voicemail

message for Mr. Sloan, but instead of hearing from him, she received an email from Mr. Blount

on January 28, 2013, directing her to withdraw the new complaint.  *See id.*, Exs. 7 & 8.

On the same day, Mr. Blount "submitted an inquiry regarding his non-selection to the Agency's Human Capital Division."  Compl.  ¶ 33.  On January 30, 2013, Mr. Blount learned from an unnamed source that Cpt. Lewis had not recommended Mr. Blount for canine training.  Mr. Blount immediately wrote a memo objecting to Cpt. Lewis's decision.  *Id.*  ¶ 34.  In an email dated February 12, 2013, Wanda Washington of the Human Capital Division informed Mr. Blount that he was not considered for the canine training course because he had not been rated "highly recommended" by Cpt. Lewis.  *Id.* ¶ 36.  Cpt. Lewis, contrary to Mr. Blount's then-current performance evaluation from Lt. Dumont, wrote that Mr. Blount "was unable 'to accept oversight and supervision from officials in the unit [which] adds to a less than harmonic environment.' [Cpt.] Lewis also noted, in bold print, that Plaintiff had used 265 hours of family and medical leave [but] omitted any reference to Plaintiff's career as at least a fully successful performer as a canine technician."  *Id.* ¶ 37.

According to Mr. Blount, it was only on February 12, 2013 that he knew he was a victim of discrimination because of his race and age and retaliation for prior EEO activities.  On March 8, 2013, he contacted the Agency's EEO office and filed an informal complaint concerning his non-selection on January 8, 2013.

### C.  Procedural History

Mr. Blount sues Jeh Johnson, DHS Secretary, in his official capacity.  Mr. Blount alleges that he was discriminated against because of his race (African American) and retaliated against for having complained of unlawful practices, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 and 3.  *See* Compl. Counts I & II.  He also alleges that he was discriminated against because of his age (47 years) in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1).  *See id.* Count III.  Finally, Mr. Blount

complains that the Agency improperly considered his leave usage under the Family Medical Leave Act (FMLA) in not selecting him for the canine explosives detection training in violation of §§ 102-104 of FMLA, 29 U.S.C. §§ 2612-14.  *See id.* Count IV.

Secretary Johnson moves to dismiss the Complaint in its entirety because:  (1) Mr. Blount's Settlement Agreement bars this action; (2) he failed to exhaust administrative remedies; (3) Mr. Blount has brought the ADEA claim under an inapplicable section that does not include the United States as an "employer"; and (4) the FMLA claim fails because there is no private right of action for the enforcement of FMLA rights.  Mr. Blount opposes the first three arguments, but "does not oppose the dismissal of Count IV of the Complaint."  Opp'n to MTD [Dkt. 9] (Pl. Opp'n) at 2.  Secretary Johnson filed a reply brief reasserting his arguments for dismissal of the Complaint.  *See* Reply in Supp. of MTD [Dkt. 12] (Def. Reply).

In addition to his opposition brief to the Secretary's motion to dismiss, Mr. Blount filed a motion pursuant to Rules 12(d) and 56(d) of Civil Procedure to deny or defer entry of summary judgment or dismissal to permit Mr. Blount to conduct discovery.  *See* Mot. for Discovery [Dkt. 10].  Mr. Blount identifies fifteen relevant categories for discovery.  Secretary Johnson filed a timely opposition to Mr. Blount's motion for discovery, *see* Opp'n to Mot. for Discovery [Dkt. 13] (Def. Opp'n), to which Mr. Blount replied, *see* Reply in Supp. of Mot. for Discovery [Dkt. 14] (Pl. Reply).  The motions are fully briefed and ripe for resolution.  Because the Court finds that the Settlement Agreement between Mr. Blount and the Agency bars his Complaint, the Court will not address the Secretary's alternative arguments for dismissal.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the adequacy of a complaint on its face.  *See* Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint

must contain sufficient factual information, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   It must be sufficient to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678-79, and "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal citations omitted).

A court must assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in favor of the plaintiff.  *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014).  A court need not accept inferences drawn by a plaintiff if such inferences are not supported by the facts set out in the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Further, a court does not need to accept as true legal conclusions set forth in a complaint.  *Iqbal*, 556 U.S. at 678.  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

Courts may consider these documents without converting a motion to dismiss into a motion for summary judgment.  *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2011) (explaining that courts may consider such documents even if they are not produced "by the plaintiff in the complaint but by the defendant in a motion to dismiss") (citations and internal quotation marks omitted).   If the court considers other documents, then "the motion shall be treated as one for summary judgment and disposed of as provided in Rule

56[.]" *Holy Land Found. For Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III.  ANALYSIS

Mr. Blount asks the Court to convert the Secretary's motion to dismiss into one for summary judgment because both the Secretary and Mr. Blount have introduced evidence outside the pleadings. He correctly notes that under Federal Rules of Civil Procedure 12(d) and 56(d), if a court considers matters outside the pleadings, a dispositive motion should be treated as one for summary judgment under Rule 56; he argues that he is entitled to discovery before

summary judgment.  *See Holy Land Found.*, 333 F.3d at 165 (D.C. Cir. 2003) ("If in considering a Rule 12(b)(6) motion [to dismiss], 'matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment' and disposed of as provided in Rule 56") (citation omitted).

Despite the clarity of the statement in *Holy Land Foundation*, with which both parties agree, there are relevant exceptions.  For instance, the general conversion rule is not triggered by citing materials that have been either attached to or incorporated by reference into the complaint or concern matters of which the court may take judicial notice, such as public records.  *Abhe & Svoboda*, 508 F.3d at 1059; *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006); *Slate v. Public Defender for Dist. of Columbia*, 31 F. Supp. 3d 277, 287-88 (D.D.C. 2014).  A document is "incorporated by reference" when it is either mentioned in the complaint or if it is a document upon which the complaint necessarily relies, even if it is produced by the defendant with its motion to dismiss.  *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624; *Slate*, 31 F. Supp. 3d at 287-88; *Ward*, 768 F. Supp. 2d at 119-20.

Secretary Johnson assumes that the allegations in the Complaint are true and exclusively relies on documents that were either incorporated by reference in the Complaint (*i.e.*, the Settlement Agreement, Compl. ¶ 32) or public records of which the court may take judicial notice (*i.e.*, administrative record during EEO administrative proceeding).  *Green v. Small*, No. CIV.A. 05-1055 (ESH), 2006 WL 148740, at *6 (D.D.C. Jan. 19, 2006) ("Because the documents involved in the administrative proceedings underlying this case are matters of public record, the Court's consideration of them here does not convert defendant's motion for dismissal into a motion for summary judgment governed under Rule 56") (citing *St. Francis Xavier Parochial Sch.,* 117 F.3d at 624).  Mr. Blount concedes that the administrative record on his

charge of non-selection, which includes the Settlement Agreement, can be incorporated by reference and is also a public record of which a court can take judicial notice.  *See* Pl. Reply at 3. It follows that the Secretary's (or the Court's) reliance on this evidence does not transform his motion into one for summary judgment.

However, Mr. Blount argues that additional facts, not contained in his Complaint but asserted in his Counter-Statement of Relevant Facts, Pl. Opp'n at 2-7, and his new affidavit, *id.*, Ex. 1 [Dkt. 9-1] (Blount Decl.), constitute "new facts" that are outside the pleadings and require the Court to treat the motion to dismiss as a motion for summary judgment.  Pl. Reply at 3.  Mr. Blount is mistaken.  A motion to dismiss addresses the adequacy of a complaint.  "It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.,* 297 F.Supp.2d 165, 170 (D.D.C. 2003).  Mr. Blount did not amend, or request to amend, the Complaint.

Further, none of Mr. Blount's alleged new facts contradicts those relied upon by the Secretary; Mr. Blount merely seeks to add extraneous allegations to argue that he is entitled to discovery.  Nearly all of Mr. Blount's new facts go to the merits of his discrimination and retaliation claims, as well as to the question of whether he exhausted his administrative remedies. None of them changes the undeniable fact that Mr. Blount signed the Settlement Agreement with his employer on January 15, 2013.  Inasmuch as the Court has a full and uncontested record on which to decide the motion to dismiss as submitted, it declines Mr. Blount's invitation to convert the pending motion into a motion for summary judgment, much less to order discovery.

"When a case is settled extra-judicially," courts apply "'familiar principles of contract law' to the settlement agreement."  *Sirmans v. Caldera*, 138 F. Supp. 2d 14, 19-20 (D.D.C. 2001) (quoting *Village of Kaktovik v. Watt,* 689 F.2d 222, 230 (D.C. Cir. 1982)) (other

citation omitted). "This is because '[a]n agreement to settle a legal dispute is a contract.'" *Id.* (quoting *Village of Kaktovik,* 689 F.2d at 230). "Such contracts, to be useful to the defendant, usually contain a clause requiring plaintiffs to waive their right to bring future suits on the issue being settled. In such cases, the court uses traditional principles of contract interpretation to determine what claims the parties intended to foreclose . . . from future litigation." *Id.* at 19-20 (internal quotation marks and citations omitted); *see also Mwabira-Simera v. Sodexho Marriot Mgm't. Servs.*, No. CIV.A. 04-0538(JDB), 2005 WL 1541041 (D.D.C. June 30, 2005), *aff'd*, 204 F. App'x 902 (D.C. Cir. 2006)*; Maceda v. Billington*, No. CIV.A. 01-0461(RMC), 2005 WL 691813 (D.D.C. Mar. 24, 2005).

The January 15, 2013 Settlement Agreement signed by Mr. Blount and DHS completely bars this lawsuit. *See generally* Settlement Agreement; Compl. ¶ 32. Such a result is evident in the plain meaning of the negotiated settlement terms. In that Agreement, Mr. Blount explicitly "[w]aive[d] *any right he may have, may have had, or may hereafter discover* to bring or file any other complaint, charge or action . . . [that] concerns or relates in any manner to his employment with the Secret Service as of the date of signing this Agreement." Settlement Agreement ¶ 2.b (emphasis added). He also "[r]elease[d] the Agency . . . from *any claims* arising from his employment . . . as of and including the date of this Agreement . . . ." *Id.* ¶ 2.c (emphasis added). He signed the Settlement Agreement after time to consider it, consult with counsel, and "with knowledge of the meaning and effect of each of its provisions." *Id.* ¶¶ 6-7 and at 6 (signature page).

Mr. Blount argues that the "Settlement Agreement only covered matters raised in several EEO complaints, three formal complaints [(*i.e.*, the 2006, 2008 and 2011 Complaints)] and an informal complaint, filed in November 2012, DHS-USSS-0024-2013 [(*i.e.*, then-pending

2013 Complaint)]." Pl. Opp'n at 11.  Mr. Blount is mistaken again.  By its plain terms, the

Settlement Agreement settled the pending complaints, as well as any claim "he may have, may

have had, or may hereafter discover" against DHS based on events prior to, or as of, January 15,

2013.  Settlement Agreement ¶ 2.b; *see also id.* ¶¶ 1, 2.c, 5.  Mr. Blount waived his rights to

complain about any DHS action concerning his employment that occurred before or on January

15, 2013, even if he were unaware of such action on that date.

   The Complaint alleges that Cpt. Lewis submitted a memorandum not

recommending Mr. Blount for the canine explosives detection training prior to January 8, 2013,

the date on which the Branch formally announced those selected for the training.  Compl. ¶¶ 26,

34. Mr. Blount immediately became aware of the non-selection.  In fact, he contacted EEO

Specialist Ms. Brezina to complain about it.  *See Fax to EEO Office.*  Since his non-selection

occurred prior to the signing of the Settlement Agreement on January 15, 2013, it follows that

the Agreement bars any complaint due to his non-selection.  The fact that Mr. Blount learned of

Cpt. Lewis's limited recommendation on January 30, 2013 is immaterial.  *See* Settlement

Agreement ¶ 2.b. (waiving rights for events prior to, or as of, January 15, 2013 that he "may

hereafter discover").

   Were there any question, it bears repeating that Mr. Blount was not ignorant of his

potential EEO complaint concerning the 2013 canine training class *before* he executed the

Settlement Agreement on January 15, 2013.  As soon as he learned that he was not selected, he

sent a fax to the EEO Office (on January 9, 2013) to complain that he was the most-qualified

candidate and was not selected because the Agency's intention was "to blackball and damage

careers instead of settling valid EEO charges."  Fax to EEO Office.  In light of his January 9 fax,

it ill-behooves Mr. Blount to argue now that he had no suspicion that discrimination or retaliation

infected his non-selection until January 30, 2013, when he learned of Cpt. Lewis's middling recommendation. While the plain language of the Settlement Agreement makes this point moot, it overwhelms any argument Mr. Blount might present as to his rights in equity.

Mr. Blount does not complain that DHS failed to fulfill its part of the settlement bargain so he cannot now fail to fulfill his part by filing an action clearly precluded by the negotiated terms. He cannot escape the clear language of the Settlement Agreement, which "settle[d] all matters, claims, or causes of action arising from or related to [Mr. Blount's] employment with the Secret Service as of the date of the signing of the Agreement." Settlement Agreement ¶¶ 2.b, 2.c, 5. Mr. Blount's contention that his suit is not barred by the Agreement unless it had both accrued and Mr. Blount were cognizant of the legal basis for the claim — *i.e.*, that an action was discriminatory or retaliatory, *see* Pl. Opp'n at 11-14 — fails as a matter of law and runs counter to the plain language of the Agreement. The language in the Settlement Agreement is permissible, clear, repeated in multiple ways, and enforceable. *See Mwabira-Simera*, No. CIV.A. 04-0538(JDB), 2005 WL 1541041; *Maceda v. Billington*, No. CIV.A. 01-0461(RMC), 2005 WL 691813.

Finally, Mr. Blount asks the Court to allow him to conduct discovery on the following issues related to the Settlement Agreement:

> (2) Documents that relate to, refer to, concern or that in any way pertain to discussions during settlement negotiations regarding discrimination complaints addressed in the January 15, 2013 Settlement Agreement that address or pertain to a replacement canine for [Mr. Blount] or his applying for the February 2013 canine explosives detection training course;

> (7) All documents that refer to, relate to, concern or that in any way pertain to communications between human resources or Barry Lewis, John Quesinberry and negotiators for [the Secret Service] in the settlement discussions pertaining to the discrimination complaints embodied in the January 2013 Settlement Agreement

14

regarding Captain Lewis'[s] non-recommendation of [Mr. Blount] for the February 2013 canine explosives detection training;

(14) All documents that refer to, relate to, concern or that in any way pertain to [the Secretary's] assertions that [Mr. Blount] failed to exhaust administrative remedies and released the present claims in the January 2013 Settlement Agreement[.]

Mot. for Discovery at 3-4.  Mr. Blount contends that these materials "will establish that a critical fact, Captain Lewis'[s] non-recommendation, was consciously withheld from [Mr. Blount] until after he had signed the Settlement Agreement" and "[w]ithout such information, [Mr. Blount's] ability to fully oppose [the Secretary's] dispositive motion is severely curtailed." *Id.* at 6. However, "the 'doors of discovery' do not unlock 'for a plaintiff armed with nothing more than conclusions,'" who seeks to introduce facts not alleged in the Complaint, and to engage in a fishing expedition. *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 130 F. Supp. 3d 236, 243 n.3 (D.D.C. 2015) (quoting *Iqbal,* 556 U.S. at 678-79).

Proof that Mr. Blount entered into the Settlement Agreement without knowledge of the terms of Cpt. Lewis's non-recommendation would not change the disposition of this case. The Settlement Agreement waived any actions based on events that had taken place before the date of its execution, without regard to whether Mr. Blount was aware of them at the time. When he signed the Settlement Agreement, Mr. Blount specifically agreed that he understood its language to say what it so clearly said, that he had had time to consider it, and that he had had the advice of counsel; Mr. Blount's current expression of misunderstanding is untenable.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. 7] will be granted, Plaintiff's Motion for Discovery [Dkt. 10] will be denied, and the case will be dismissed.  A memorializing Order accompanies this Opinion.

15

Date: September 22, 2016

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge